UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DALLAS DEAN SMITH, | ) | CASE NO. C05-0492-RSM-MAT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Dallas Dean Smith proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) disability benefits under Title XVI, 42 U.S.C. § 1383(c)(3) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that the decision be affirmed and this matter dismissed.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1969.[1] He completed the sixth grade, but did not complete the seventh grade. He was transferred to Boy's Ranch where, according to plaintiff, he was tested at the 9th grade level. He attended community college in the summer quarter of 2003. His past work experience includes employment as a machine operator.

Plaintiff applied for SSI on October 1, 2001. Plaintiff's application was denied initially and on reconsideration, and he timely requested a hearing. A previous application was denied with no further action.

A hearing was held before an ALJ on August 25, 2003, taking testimony from plaintiff, a medical expert and a vocational expert. (AR 40-107.) On January 23, 2004, the ALJ issued a decision finding plaintiff not disabled. (AR 24-35.) On January 31, 2005, the Appeals Council denied plaintiff's request for review. (AR 5-7.) Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff appealed to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). A plaintiff will be found to be "not disabled" if drug addiction and/or alcoholism (DAA) is a contributing factor

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -2

material to the determination of disability. 42 U.S.C. § 423(d)(2)(C), 20 C.F.R. § 416.935(a). The burden of proof is on plaintiff to establish that DAA is not material to the disability claim. *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

At step one of the sequential evaluation process, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found that plaintiff had severe impairments consisting of post traumatic stress disorder (PTSD) and a personality disorder.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that, although plaintiff met the disability standard under Listing 12.09 "Substance Addiction Disorders" with consideration of his substance abuse, his impairments did not meet or equal a listed impairment absent consideration of substance abuse.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff not able to perform his past relevant work, but possessing the RFC to perform a significant range of medium level work impeded by additional exertional and/or non-exertional limitations. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ found plaintiff able to perform a significant number of jobs in the national economy including assembler, hand sander, and laundry work II.

01  This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff contends that the ALJ committed legal error in failing to list a substance disorder or mood disorder as one of the step two severe impairments, while finding that plaintiff met the disability standard under the listed impairment for substance addiction disorder at step three. Plaintiff also contends that the ALJ failed to explain why other disorders were not found to be severe impairments. Next, plaintiff asserts that the ALJ did not properly consider the opinion of certain treating and/or examining sources, and improperly dismissed part of the opinion of the impartial medical expert. Plaintiff further argues that the ALJ did not give sufficient reasons for finding him to be not fully credible. Finally, plaintiff asserts that the hypothetical posed by the ALJ to the vocational expert was incomplete.

The Commissioner argues that the ALJ's decision is supported by substantial evidence and in accord with law and should be affirmed.

<u>Substance Addiction Disorder and Sequential Evaluation</u>

The ALJ found at step three of the sequential analysis that Mr. Smith met the requirements of Section 12.09 (Substance Addiction Disorders) of the "Listing of Impairments." (AR 30.)

Plaintiff argues that the ALJ's consideration of his alcohol dependence was legally inadequate because she did not first find that his substance addiction was a step two severe impairment. Plaintiff's objection is not well taken. At least one Circuit Court addressed this issue by noting that substance addiction disorder [2] does not have its own criteria such that its severity can be evaluated in any way other than by cross reference to nine separate impairments named in the substance addiction disorder listing, 20 C.F.R. Ch. III, Pt. 404 Subpt. P. App. 1, §12.09. *Petition of Sullivan*, 904 F.2d 826, 840 (3d Cir. 1990).[3] Since the ALJ found at step two that plaintiff had both a personality disorder and PTSD (an anxiety disorder), he met the required level of severity for a substance addiction disorder, and the ALJ appropriately considered plaintiff's substance addiction disorder at step three of the sequential analysis.

Plaintiff also argues that the ALJ should have completed the five step sequential analysis before considering the impact of his drug and alcohol use. This argument misconstrues the significance of the Listing of Impairments, which are constructed so that an individual with an impairment that meets or is equivalent in severity to the criteria of the listing is presumptively disabled. 20 C.F.R. § 416.920(d), 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. Because plaintiff was found disabled at step three of the sequential analysis, it was not necessary for the ALJ to continue through steps four and five before considering the impact of plaintiff's drug and alcohol

---

[2] Substance Addiction Disorders as referenced in Listing 12.09, are not precisely identical to the Axis I Substance-Related Disorders described in the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, (DSM-IV-TR).

[3] This case predated the amendment of Title II of the Social Security Act to preclude a finding of disability when alcoholism or drug addiction is a contributing factor material to the determination of disability.

REPORT AND RECOMMENDATION
PAGE -5

abuse on his disability.

## Other Impairments

A physical or mental impairment is one that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005) An impairment is not severe if it does not significantly limit the claimant's physical ability to do basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). While the ALJ found that plaintiff's post traumatic stress and personality disorders were severe, plaintiff argues that other diagnoses that appear in the medical record are not discussed by the ALJ. Specifically, plaintiff points to the diagnoses of status post closed head injury, attention deficit hyperactivity disorder, mood disorder/bipolar disorder/major depression, and psychosis, NOS.

Several of the diagnoses referenced by plaintiff are "rule-out" diagnoses, neither ruled in, nor ruled out by the examining physician. Since plaintiff bears the burden of proving he is disabled, *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999), there is no error in failing to find a severe impairment on the basis of such diagnoses, including the attention deficit hyperactivity disorder and the bipolar disorder. (*See* AR 256, 321, 324, 326, 332; AR 251 (listing ADHD and bipolar disorders as "possible" diagnoses needing more information.)) Further, although plaintiff contends he had been diagnosed with "status post closed head injury," this is not an impairment in and of itself, although the sequella of such an injury (such as memory loss) might constitute an impairment. *See, e.g., Nutter v. Barnhart*, 271 F. Supp. 2d 1127, 1138-39 (S.D. Iowa 2003).

The record does show the diagnosis of major depression listed in earlier reports of Kathryn Draper (AR 332) and Jennifer Lindquist/Lisa Bach (AR 267, 274). However, Draper, as a nurse

REPORT AND RECOMMENDATION
PAGE -6

practitioner, and Lindquist and Bach, as mental health professionals, are not "acceptable medical sources" whose opinions regarding the nature and severity of impairments, symptoms, diagnosis and prognosis would be recognized by the regulations. 20 C.F.R. § 416.927(a)(2). At any rate, in later reports, the diagnosis no longer appears, and Draper comments: "He still has mood swings but in general he is doing OK." (AR 318.)

Plaintiff also points to the diagnosis of Psychosis NOS as being improperly omitted from the ALJ's analysis. However, the record does not show that plaintiff continued to suffer from this condition after he was stabilized with medication following his hospitalization and treatment in January 2003.

Finally, even if a diagnosis has been established, the medical evidence must further show the existence of a severe impairment. *See, e.g., Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997). The record does not show that plaintiff suffered any additional impairment of vocational capacity as a result of the diagnoses he contends were overlooked, so the resulting error, if any, would be harmless.

Treating Source Opinion

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

REPORT AND RECOMMENDATION
PAGE -7

*Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Where the opinion of the treating physician is contradicted, and the non-treating physician's opinion is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). It is the sole province of the ALJ to resolve this conflict. *Id.*

A treating doctor's opinion, while generally accorded the greatest weight, is not binding on an ALJ with respect to either the existence of an impairment or the ultimate question of disability. *Ukolov,* 420 F.3d at 1004. Indeed, an opinion from a medical source on an issue reserved to the Commissioner, such as an opinion that the claimant is disabled or unable to work, is not considered a medical opinion, and is given no special significance. 20 CFR § 416.927.

A.   <u>Katherine Draper, ARNP and Michael Snyder, MD</u>:

Plaintiff takes issue with the ALJ's lack of deference to the opinions of his treating providers. Plaintiff notes the ALJ's failure to reference in her decision a September 23, 2003 letter signed by Katherine Draper, ARNP, and Michael Snyder, MD. An individual, even an "acceptable medical source" such as a physician, will not be considered a "treating source" if the claimant's relationship with the physician is based solely on the need to obtain a report in support of the claim for disability. 20 C.F.R. § 416.902. Although Dr. Snyder signed the letter in question,[4] there is no indication anywhere in the medical records that Dr. Snyder treated or even saw plaintiff, so there can be no error in failing to give his opinion the weight due to a treating source. Draper did,

---

[4] Dr. Snyder's signature appears to have been an afterthought, because the letter's author, presumably Draper, begins the letter by saying "I am writing this letter for Mr. Smith . . . ." (AR 430) (emphasis added.))

01 however, provide treatment to plaintiff over a number of visits. Although a nurse practitioner does

02 not meet the regulations' requirements for an "accepted medical source," 20 C.F.R. § 416.913(a),

03 the regulations do allow evidence from "other sources," such as nurse-practitioners, to be

04 presented. 20 C.F.R. § 416.913(d). However, evidence of a medically determinable impairment

05 must be established by an "acceptable medical source." 20 C.F.R. § 416.915(a). Because the

06 September 23, 2003 letter consists entirely of opinions regarding plaintiff's diagnoses and resulting

07 impairments, the ALJ did not err in disregarding it.

08 B.     <u>W.R. Wilkinson, E.D.</u>:

09     Plaintiff argues that the ALJ ignored the comments of Dr. Wilkinson, an examining

10 physician for the Washington State Department of Social and Health Services, who stated:

11 
> [I]f he were to attempt a normal, day-to-day work basis–<u>w</u>/the <u>pressures</u>, <u>expectations</u>
> of a normal work setting–he would not tolerate a number of new, different, changing
12 > tasks–would become disorganized, confused or hyper-sensitive and [illegible] . . . he
> is quite sensitive, wary of others, appears to lack empathy as well as insight–works
13 > hard at this in his 12 steps–but in a usual work-place–normal, pressures, demands,
> social know-how–he would become frantic, belligerent, or withdraw.

14

15 (AR 234.) Dr. Wilkinson went on to write that "SSI is recommended–unless DVR [Department

16 of Vocational Rehabilitation] would work with him while he learns to manage recovery and

17 maintenance of other issues." (AR 235.)

18     In considering the opinions of Dr. Wilkinson, the ALJ found as follows:

19 
> On January 6, 2000, W.R. Wilkinson, E.D. completed a psychological/psychiatric
> evaluation diagnosing the claimant with polydrug dependence, post traumatic stress
20 > disorder, chronic, attention deficit hyperactivity disorder, and personality disorder,
> NOS. Dr. Wilkinson noted the claimant readily admitted to a long history of
21 > addiction beginning in early adolescence. In regard to functional limitations, Dr.
> Wilkinson thought the claimant had moderate limitations in his ability to understand,
22 > remember and follow complex instructions; to learn new tasks; and to interact

REPORT AND RECOMMENDATION
PAGE -9

01 appropriately in public contacts but had marked limitation in relating appropriately to co-workers and supervisors.

03 (AR 27.)

04 Plaintiff argues that the ALJ ignored Dr. Wilkerson's comments about his likely response 05 to the normal pressures of a work setting. The ALJ, however, incorporated Dr. Wilkerson's 06 concerns in the findings of plaintiff's RFC:

> He can perform simple repetitive tasks without any additional supervision. He has the ability to understand, remember and carry out short and simple instructions. He can accept instructions from supervisors but would have difficulty interacting with coworkers and public. Therefore, he would be limited to minimal to no interaction with public and minimal interaction with supervisor and co-workers. He may need to have new tasks explained or shown. He would perform best in a work setting that did not require frequent or rapid changes. Additionally, he needs to be in a work environment of low stress.

12 (AR 32.)

13 Although Dr. Wilkerson described concern with what he described as a "normal work 14 setting," that phrase is vague and over-generalized. The doctor's opinion regarding plaintiff's 15 ability to work is given no special significance, since it is a dispositive issue reserved to the 16 Commissioner. Plaintiff does not demonstrate error with regard to the ALJ's consideration of Dr. 17 Wilkerson's opinions.

18 C.   Linda Miller, DO:

19 Plaintiff was evaluated by Linda Miller, DO, on January 28, 2002. The ALJ appropriately 20 declined to adopt Dr. Miller's opinion on the ultimate question of plaintiff 's employability. (AR 21 32.) The ALJ noted that Dr. Miller's conclusion in that regard was less persuasive than the rest 22 of her opinions given Dr. Miller's observation that plaintiff was doing well during a period of

REPORT AND RECOMMENDATION
PAGE -10

abstinence from drugs and alcohol.  However, the ALJ did note Dr. Miller's findings regarding plaintiff's functional assessment:

> Dr. Miller commented she did not find any gross cognitive neuropsychological testing. Dr. Miller stated that he seemed to be doing well during this period of abstinence. Dr. Miller commented that if he remained clean and sober his symptoms could improve but she noted he was at high risk for relapsing. With regard to functional assessment, Dr. Miller opined the claimant could accept instructions from supervisors. Due to his mental illness, Dr. Miller thought he would have difficulty performing detailed and complex tasks, interacting with co-workers and the public, performing work activities on a consistent basis, maintaining regular attendance in the workplace, completing a normal workday or workweek, and dealing with usual stress in competitive work.

(AR 29.)  As with Dr. Wilkerson's opinions, the ALJ incorporated Dr. Miller's opinions into the findings as to plaintiff's RFC.[5]

In sum, the record shows that the ALJ assigned the proper weight to the opinions of plaintiff's treating and examining physicians, which were in large part accepted by the ALJ and incorporated into the findings as to plaintiff's RFC.  Insofar as the physicians' opinions as to plaintiff's ultimate employability intruded into the province of the Commissioner, the opinions were not medical opinions and were properly given no special significance.

<u>Opinion of Impartial Medical Expert</u>

Plaintiff contends that the ALJ rejected the opinion of the impartial medical expert, Dr. C. Richard Johnson, relating to the connection between his disability and his substance abuse. Plaintiff asserts that Dr. Johnson was of the opinion that his substance addiction was not a material factor contributing to his disability.  This does not accurately characterize Dr. Johnson's opinion.

---

[5] Dr. Miller did not preclude plaintiff's ability to perform all work. In writing that plaintiff "may" have difficulties maintaining regular attendance in the workplace, Dr. Miller also opined that he would be able to "probably perform simple and repetitive tasks without special or additional supervision and accept instruction from supervisors." (AR 281.)

REPORT AND RECOMMENDATION
PAGE -11

01     Dr. Johnson testified as follows:

02     Q:     Okay. And do you have an opinion as to the degree of materiality of his
03            substance abuse on his impairments?
04     A:     I think that the personality diagnosis would be there, even without the alcohol,
05            but I think that the alcohol certainly intensifies the symptoms that go along
06            with that. And I think that was exemplified by his relapse in January in which
07            he was acutely suicidal.
08     Q:     Okay. Would some of the other symptoms of the personality disorder, the
09            disturbance of mood–I believe you said disturbance of mood and affect—
10     A:     Yes.
11     Q:     –and the inappropriate and suspiciousness or hostility. Do you think that
12            those symptoms would still be there, regardless of the –
13     A:     Yes.
14     Q:     –alcoholism and substance abuse?
15     A:     I do. I think that the alcohol would make those–accentuate those things, but
16            they would be there even without the alcohol.

17 (AR 85.)

18     Dr. Johnson went on to compare plaintiff's functional limitations and restrictions of
19 activities of daily living with and without substance abuse, stating that with drug and alcohol use,
20 the activities "would be increased, probably significantly" up to a marked level. (AR 87-88.) The
21 ALJ, therefore, appropriately treated Dr. Johnson's testimony as supportive of the conclusion that
22 plaintiff's drug and alcohol abuse was material to his disability.

REPORT AND RECOMMENDATION
PAGE -12

Credibility

Plaintiff argues that the ALJ did not properly evaluate his credibility. The ALJ must give specific, convincing reasons for rejecting the subjective statements of a Social Security disability claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). In discussing plaintiff's testimony, the ALJ found as follows:

> The claimant's testimony is generally credible but not to the extent alleged. The claimant alleges short term memory problems but he was noted to be able to name 3/3 objects on immediate recall. [Record citations omitted.] Furthermore, there is no indication in the record that the claimant has significant problems with memory. The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. He lives in a recovery house where he cooks, does chores, watches television, goes to the food back [sic] and rents movies with his roommate. He sometimes goes to the movies or to the river with his girlfriend. He testified he get[s] along with the others at the recovery house. The claimant's psychiatric symptoms appear to remain stable when taking his medications and abstaining from alcohol and drugs.

(AR 32.)

An ability to take care of personal needs, prepare easy meals, do light housework, and shop for some groceries may be seen as inconsistent with a condition that precludes all work activity. *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). The ALJ did not totally reject plaintiff's testimony about his memory problems, but rather found that the problems did not exist to the extent alleged. Plaintiff's testimony about his memory problems was to the effect that he has to "sit and really think hard" as a result of these problems. (AR 56.) The ALJ's RFC finding took these memory problems into account by limiting plaintiff to simple repetitive tasks that require short and simple instructions, with the need to have new tasks explained or shown in a low stress work setting that did not require frequent or rapid changes. (AR 32.) Thus, plaintiff has not demonstrated error in the ALJ's consideration of plaintiff's testimony about his memory problems.

REPORT AND RECOMMENDATION
PAGE -13

## Vocational hypothetical

Plaintiff contends that the hypothetical posed to the vocational expert at the hearing did not fit the facts and the medical evidence and, therefore, the ALJ's conclusion regarding plaintiff's ability to perform alternative work was not supported by substantial evidence. In particular, plaintiff points to a limitation in his ability to maintain regular work attendance.

Plaintiff testified he was attempting to obtain his GED degree, but missed eight days of school over a two month period. Dr. Johnson, the independent medical expert, testified that if plaintiff missed eight days in two months of school, "that <u>might</u> be indicative of how he'd perform on the job, and that certainly would be a negative effort." (AR 89 (emphasis added.)) Dr. Miller also was of the opinion that plaintiff might have difficulty maintaining regular work attendance.

The ALJ posed the following hypothetical to the vocational expert:

> The Claimant is a younger individual, and he has a marginal education, somewhere between six and nine...he tested at the ninth grade, but he actually completed the sixth grade. ... The Claimant does have some issues related to his hernias, which would probably preclude the performance of very heavy lifting, carrying. The Claimant has some nonexertional limitations which would indicate that the Claimant should be able–or could perform simple and repetitive tasks without any additional supervision. He should be able to accept instructions from supervisors. He would have difficulty in interacting with coworkers and members of the public, and would perform best in jobs in which that was minimal to no public interaction and minimal interaction with supervisors and coworkers. Somewhat contradiction [stet] to that was Dr. Johnson's testimony that he doesn't take instruction well, so he would not have–he would not function well in a job where the supervisor were constantly–where he'd have to constantly be observed or supervised, but he could learn jobs independently and then function on his own. There is some evidence in the record that the Claimant has some short-term memory impairment. Assume he'd have to have new tasks explained or shown.

(AR 94-95.)

Added to the hypothetical were the following limitations:

REPORT AND RECOMMENDATION
PAGE -14

> Now assume further this same individual–and counsel, I'm looking now at the DDS evaluation, 17F. And this evaluator determined that the Claimant would be limited in his ability to understand or remember detailed, but he would retain the ability to understand and remember very short and simple instructions. He would have some difficulty with concentration, and he would be limited in his ability to carry out only detailed instructions. He would retain the ability to carry out very short and simple instructions. **His–he might have some difficulty or he could have difficulty with low energy, which might interfere with his ability to maintain regular attendance ... and persist through a normal workweek, but it is not felt to be so severe that it would prevent him from being consistent the far greater part of the time, which explains that. Okay. This is true if he were involved in a less stressful activity, meaning less public interaction in carrying out very short and simple instructions. So, if he were not in a stressful job with a lot of public contact and interaction, and he were engaging in short, simple instructions and directions, he could remember those and he could maintain regular attendance at work.**
>
> . . .
>
> I think the most important limitation is limiting his interaction with members of the public. He would also do best in environments which did not require frequent or rapid changes in job duties and instructions.

(AR 96-97 (emphasis added.))

The vocational expert testified that plaintiff could perform the work of assembler, hand sander, and laundry work II, which exist in significant numbers in the national economy. The expert agreed that if someone missed more than two days of work a month, he would not be able to maintain his job. (AR 99.)

The ALJ noted and considered Dr. Miller's opinion that plaintiff might have difficulty maintaining regular attendance in the workplace and plaintiff's testimony that he missed eight days of school during the summer quarter. (AR 30, 31.) The ALJ's hypothetical relied on the Mental RFC Assessment completed by Steven T. Haney, MD, the state agency consultant, which addressed the issue of plaintiff's difficulty maintaining regular attendance by requiring a less stressful environment with less public interaction and short, simple instructions. (AR 334-37.) The

REPORT AND RECOMMENDATION
PAGE -15

01 ALJ gave significant weight to the findings of the state agency consultant as supported by

02 objective evidence and not inconsistent with other substantial evidence in the record. Reports of

03 nonexamining physicians may serve as substantial evidence when supported by other evidence in

04 the record. *Andrews*, 53 F.3d at 1041. Indeed, the hypothetical was not inconsistent with either

05 Dr. Miller's opinions or plaintiff's own testimony, as it incorporated specific conditions directed

06 at these particular difficulties.

07 The vocational expert's hypothetical contained all of the limitations the ALJ found credible

08 and supported by substantial evidence in the record. Therefore, the ALJ properly relied on the

09 vocational expert's testimony responding to the hypothetical. *Bayliss v. Barnhart*, ___ F.3d ___,

10 No. 04-35634, 2005 U.S. App. LEXIS 23646, * 11 (9th Cir. Nov. 2 2005).

11 **CONCLUSION**

12 The decision of the ALJ is supported by substantial evidence and free of legal error.

13 Accordingly, for the reasons described above, the undersigned recommends that the decision be

14 AFFIRMED and this matter DISMISSED.

15 DATED this  3rd  day of November, 2005.

16

17 Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -16